UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' OBJECTION TO DEFENDANT FRANCES DRISCOLL'S MOTION IN LIMINE FOR PRELIMINARY INSTRUCTION OF THE JURY**[1]

Defendant Frances Driscoll has moved the Court *in limine* for a preliminary instruction of the jury. The United States objects to defendant Driscoll's request. The bases for the United States' objection are detailed in the accompanying memorandum of law filed simultaneously herewith.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

[1] Defendant Urciuoli joins in Driscoll's motion and relies on Driscoll's supporting memorandum in support of his request. Accordingly, the United States, although filing a separate objection to Urciuoli's motion, incorporates the arguments in support of its objection to Driscoll's motion *in limine* in support of its objection to Urciuoli's motion.

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF OBJECTION TO DEFENDANT FRANCES DRISCOLL'S MOTION IN LIMINE FOR PRELIMINARY INSTRUCTION OF THE JURY**

## I. Introduction

Defendant Frances Driscoll has moved the Court *in limine* for a preliminary instruction of the jury. Driscoll asks the Court to instruct the jury concerning: (1) the differing duties specified in Rhode Island's ethics laws for public officials compared with private parties; (2) Rhode Island law's definition of what constitutes a conflict of interest under its ethics laws; and (3) the distinction between honest services mail fraud based on a quid pro quo bribery versus a "non-disclosed" conflict of interest theory of prosecution.

The United States objects to Driscoll's requests. Nothing in the case law governing honest services fraud prosecutions, the Court of Appeals' decision in United States v. Urciuoli, 513 F.3d 290 (1st Cir. 2008), or the United States' theory of the case warrants the instructions Driscoll requests. Furthermore, in response to Driscoll's and Urciuoli's motions to strike language in the Indictment, the United States has agreed to confirm the Indictment to the present posture of the case, specifically striking certain language which references conflicts of interest and state ethics laws. See United States' Mem. in Supp. of Obj. to Defs.' Mot. to Strike. Accordingly, Driscoll's motion should be denied.

## II. Argument[2]

Driscoll would have this Court believe that the case currently before it, one in which Celona's work on the ambulance run issue is no longer a basis for finding that defendants violated the honest services mail fraud statute, is one which presents "unique" and "difficult" issues on how to instruct the jury concerning the interplay between state and federal law. It does not.

Following the court's decision in Urciuoli, the elements the United States is required to prove in an honest services mail fraud case in this Circuit remain essentially unchanged. To establish a violation of 18 U.S.C. §§ 1341 and 1346, the government must prove three elements:

(1) a scheme, substantially as charged in the indictment, to defraud;

(2) the defendant's knowing and willing participation in this scheme with the intent to defraud; and

(3) the use of the United States mails, on or about the date charged, in furtherance of this scheme.

First Cir. Pattern Crim. Jury Instr. § 4.12 (1997); see United States v. Sawyer, 239 F.3d 31, 39-40 (1st Cir. 2001) ("Sawyer II").

As this Court knows, 18 U.S.C. § 1346 provides that "the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346. Section 1346, and therefore § 1341, "reach[es] schemes to defraud individuals of the intangible right to honest services of government officials." United States v. Sawyer , 85 F.3d 713, 723-24 (1st Cir. 1996) ("Sawyer I") (citing United States v. Grandmaison, 77 F.3d 555, 565-66 (1st Cir. 1996)). With respect to the second element, the United States must

[2] The United States respectfully refers the Court to its Memorandum in Support of its Objection to Driscoll's Motion for Relief from Prejudicial Joinder for a complete procedural and factual recitation of the case.

prove that the defendant "acted with two kinds of intent: that [he] intended to deprive the public of [Celona's] honest services, and that [the defendant] intended to deceive the public." Sawyer II, 239 F.3d at 41. The first kind of intent requires either that the defendant "intended to influence [Celona] in [his] official action" or intended that Celona fail to disclose a conflict of interest resulting in personal gain. Id. at 40-41. The United States may demonstrate intent to influence in several ways. "For example, a bribery-like, corrupt intent to influence official action necessarily is an intent to deprive the public of an official's honest services. A person might not, however, give an unlawful gratuity with the intent to effect a specific quid pro quo. Rather, . . . a person with continuing and long-term interest before an official might engage in a pattern of repeated intentional gratuity offenses in order to coax ongoing favorable official action in derogation of the public's right to impartial official services." Id. at 41.

### B. Preliminary Instruction on the Difference Between A Quid Pro Quo Bribery Theory of Honest Services Mail Fraud Versus a Concealed Conflict of Interest Prosecution Is Unwarranted Based on the United States' Theory of the Case

As the Urciuoli decision makes clear, the primary theory of the government's case is that Urciuoli and Driscoll paid Celona in exchange for official acts and hid that fact from the public in order to continue to pay Celona undetected. 519 F.3d at 299. To a lesser extent, at the first trial, the United States also urged that defendants committed honest services mail fraud in that they intended Celona to fail to disclose a conflict of interest resulting in personal gain. Presently, the United States is not proceeding on a concealed conflict of interest theory. Any doubt concerning the United States' current basis for prosecution is eliminated by its lack of opposition to defendants' motions to strike certain conflict of interest language from the Indictment. Thus,

because the United States is not proceeding on a failure to disclose a conflict of interest theory of prosecution, Driscoll's third request for a preliminary instruction concerning the difference between a "non-disclosed" conflict of interest and a quid pro quo bribery theory of prosecution is inappropriate. See United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006) ("[W]hat the jury is to be given is the law pertinent to the case before it.").[3]

### C. Driscoll's Proposed State Law Preliminary Jury Instructions Are Not Pertinent to the Case At Bar

Driscoll contends that the official acts which Celona took concerning legislation, except one instance, all related to legislation which fell within the class exception delineated in Rhode Island General Law § 36-14-7(b).[4] Driscoll Supp. Mem. at 3. Further, Driscoll maintains that under Rhode Island law, a legislator is permitted to take official action on legislation which benefits his employer if the legislation falls within the class exception under § 36-14-7(b). Thus, she asks the Court to give a preliminary instruction to the jury which outlines this notion of a "permissible" conflict of interest stemming from the class exception. Driscoll also asks that the Court preliminarily instruct the jury concerning the differing duties specified in Rhode Island's ethics laws for public officials compared with private parties. Driscoll maintains that such preliminary instructions are necessary in order for the jury to understand what conduct violates the statute. Driscoll Supp. Mem. at 4.

---

[3] Even in the absence of a concealed conflict of interest theory, the evidence concerning the false statements Urciuoli and Driscoll made to the Ethics Commission and the information they withheld from the Commission, are still relevant to (a) the intent to deceive element of the crime and (b) showing the guilty minds of the defendants.

[4] Urciuoli makes a similar claim in his Motion to Dismiss Portions of the Indictment, or in the Alternative, for Limiting Instructions. Doc. 286.

The concerns expressed by the Circuit over the jury instructions in this case stemmed from three items: (1) whether the trial court's definition of official action improperly permitted the jury to find Celona's ambulance run advocacy a deprivation of the public's right to honest services;[5] (2) how to define Celona's use of his legislative powers to extract favorable treatment from Blue Cross and Blue Shield (BCBS) and United Health Care in favor of RMWC in accordance with the honest services mail fraud statute; and (3) whether the trial court's instruction as to Celona's lack of "independent judgment" and "disinterested service" might have permitted the jury to find that a mere conflict of interest violated the honest services statute. The third issue is the only one which conceivably implicates the interplay of state and federal law. However, Driscoll's proposed preliminary instructions concerning a legislator's duties under state law and Rhode Island's definition of conflicts of interest do not address the Circuit's concerns that the jury might have convicted defendants on a disclosed conflict of interest theory of prosecution. Moreover, in light of the United States' agreement to conform the Indictment and strike certain language, Driscoll's requests are inappropriate and unnecessary.

A legislator's duties to the public derive from his general fiduciary duty to the citizens and federal common law. United States v. Woodward, 149 F.3d 46, 62 (1st Cir. 1998); Sawyer II 239 F.3d at 39. The holdings of Woodward and Sawyer remain undisturbed after Urciouli. Although in Urciuoli the Circuit remarked that "conceivably, in some circumstances, state law might bear on what 'services' are owed by a state legislator," the court rejected the notion that state law was

[5] The Circuit specifically noted that "the insurance episodes were properly considered as potentially criminal– as, needless to say were Celona's actions in promoting or blocking legislation to favor RWMC." Urciuoli, 513 F.3d at 297. Indeed, the court stated "[t]he latter alone, involving multiple episodes over a substantial period, probably would have assured conviction, at least, or especially of Urciuoli." Id. (emphasis added).

"pertinent" in this case because the United States "had [not] chosen to proceed on the theory that a conflict of interest alone (as opposed to a bribe or concealment of a conflict) was a basis for conviction." Urciuoli, 513 F.3d at 298-99. Instead, the court observed that "the government's position throughout [has been that] Celona was being paid for performing official acts - specifically, that the case [is] one of quid pro quo bribery with payments routed through the Village as disguise. Nothing in Rhode Island law purports to authorize or protect such conduct." Id. 513 F.3d at 299. (emphasis added).

Indeed, although the court conceded that there was some indication of jury confusion, it concluded that "given the government's theory of the case and the instructions as a whole . . . we doubt that the jury convicted based solely on the conflict of interest and without finding bribery for official acts. Certainly, the most obvious basis for conviction was payment for helping to advance or obstruct legislation,[6] and the least obvious was the notion that Celona merely acted under a conflict of interest."[7] Id. at 299. Although the court suggested that upon retrial "precautions" could be taken to reduce such confusion, nothing in the court's opinion warrants the extensive reference to state law urged by Driscoll, certainly not in the face of the United States' agreement to (a) strike certain "conflict of interest" language from the Indictment, and (b) eschew a concealed conflict of interest theory. Instructions which adhere to the First Circuit's

---

[6] On appeal, neither Urciuoli nor Driscoll disputed that there was sufficient evidence to convict them of honest services mail fraud in "so far as the convictions rested on bribing Celona to influence legislation." Urciuoli, 513 F.3d at 293.

[7] Similarly, in its discussion of the evidence relating to Celona's state house meetings with representatives of BCBS and United, the court remarked that "while non-disclosure can sometimes constitute an independent violation of the [honest services] statute, here the non-disclosure was in some sense a sideshow to the real harm – the use of legislative threats for public ends." Urciuoli, 513 F.3d at 298.

honest services jurisprudence along with the elimination of references in the Indictment to Celona's conflict of interest will sufficiently limit the jury's consideration of the case to whether defendants engaged in quid pro quo bribery in violation of the statute and reduce any potential for confusion.

Driscoll's current jury instruction request is much like the one she and Urciuoli requested at the first trial, the district court's rejection of which the Court of Appeals suggested was appropriate given that the United States' theory of the case was one of quid pro quo bribery. "Urciuoli and Driscoll sought to argue in the district court that state law permitted Celona to vote on legislation affecting RWMC, despite his employment by a partly owned subsidiary of RWMC, so long as the legislation affected RWMC no more than any other hospital provider." Urciuoli, 513 F.3d at 298. Before the trial court, defendants cited Rhode Island General law § 36-14-7, as Driscoll does now, in support of their request that the trial court instruct the jury as to state ethics law.

"What the jury is to be given is the law pertinent to the case before it." United States v. Potter, 463 F.3d 9, 19 (1st Cir. 2006) (emphasis added). In this case, in endorsing the trial court's rejection of defendants' proposed state law jury instruction, the Circuit has already stated that such an instruction is not "pertinent:"

> Conceivably in some circumstances, state law might bear on what "services" are owed by a state legislator. But just how far state law might be a premise for honest services fraud, cf Sawyer I, 85 F.3d at 728, or alternatively, might "immunize" conduct that would otherwise be a federal crime, are tricky questions and may depend *inter alia* on precisely what the government has charged. The issue could be pertinent here *if* the government in this case had chosen to proceed on the theory that a conflict of interest alone (as opposed to a bribe or a concealment of a conflict) was a basis for conviction.

> But the government's position throughout was that Celona was being paid for performing official acts – specifically, that the case was one of quid pro quo bribery with payments routed through the Village as a disguise. Nothing in Rhode Island law purports to authorize or protect such conduct.

Urciuoli, 513 F.3d at 289-99 (emphasis added). Given the Circuit's recognition that nothing in Rhode Island law authorizes the type of conduct at the heart of the United States' case, it is not surprising that Driscoll concedes that "[n]o one doubts that it illegal to pay a legislator to influence an official decision, regardless of whether or not that decision relates to legislation falling within the class exception." Driscoll Supp. Mem. at 3.

Driscoll's preliminary instruction request is also akin to the jury instructions requested by the defendants in United States v. Potter, and should be rejected for reasons similar to the bases upon which the Court rejected the defendants' request in that case. In Potter, as the Court likely recalls, defendants sought instructions that "it was not unlawful merely to hire a lawyer whose partner is a member of the legislature even if the client has business in the legislature nor honest services fraud to violate conflict of interest or ethics laws." Potter, 463 F.3d at 19. The Circuit found no error in this Court's rejection of defendants' proposed instructions because the government's theory of the case did not rest on such a theory, nor was there a likelihood that the jury might convict on such a theory. Id. at 19.

In this case, the United States has charged that Urciuoli and Driscoll violated the honest service mail fraud statute fraud by paying Celona money in exchange for Celona taking official actions – quid pro quo bribery. See Indict. ¶ 97; Urciuoli, 513 F.3d 299. The Indictment also charges that Urciuoli and Driscoll committed honest services fraud because they intended that Celona deceive the State of Rhode Island and its citizens concerning the true nature of Celona's

relationship with RWMC in order to enable to Celona to continue to promote RWMC's political interests. It did not rely, and is not relying on, either a "conflict of interest alone" or concealed conflict of interest theory as a basis for conviction. Urciuoli, 513 F.3d 298-99. Any vestige of doubt over whether the United States' theory of the case also includes a concealed conflict of interest basis of prosecution is eliminated by the United States' lack of opposition to striking such language in the Indictment. Thus, issues concerning the extent to which Rhode Island law provides the outer limits of an honest services fraud prosecution or how Rhode Island law might immunize defendants' conduct which might otherwise constitute a federal crime, are not pertinent here, and Driscoll's request for preliminary instructions concerning the same should be rejected. Urciuoli, 513 F.3d at 289-99.

In evaluating Driscoll's preliminary instruction requests, it is worth emphasizing that although in some instances a defendant's knowledge of state ethics laws can be relevant to her state of mind, hence the Urciuoli court's discussion of state law potentially "immunizing" conduct that might otherwise be a federal crime, it is not relevant here for two reasons. Nothing in Rhode Island ethics laws authorizes the quid pro quo bribery conduct at the heart of the United States' case. See Urciuoli, 513 F.3d at 299. See also R.I. Gen. L. § 36-14-5(I).[8] In addition, the Indictment alleges that Urciuoli and Driscoll lied in connection with the April 6, 1998, letter to the Ethics Commission in furtherance of the scheme. The Indictment does not allege that through

---

[8] Section 36-14-5(i) provides the following:

> No person shall give or offer to any person covered by this Code of Ethics . . . any gift, loan, political contribution, reward or promise of future employment based on any understanding or expectation that the vote, official action or judgment of said person would be influenced thereby.

their misrepresentations to the Ethics Commission, Urciuoli and Driscoll violated state ethics laws. The April 6th letter to the Ethics Commission misrepresents who Celona would be working for, who would be paying him, and the nature of the work he would be performing all in order to disguise the true nature of Celona's relationship with RWMC. These lies are not dependant upon any specific knowledge of Rhode Island's ethics laws nor are they any different than those in a typical mail fraud case in which the United States alleges that the defendant lied in order to conceal facts salient to the scheme to defraud. Urciuoli's and Driscoll's lies to the Ethics Commission do not warrant any additional instruction concerning the interplay of state versus federal law than in a typical mail fraud case.

In sum, this case is about quid pro quo bribery. The United States presented its case at the first trial primarily based on that theory. The Indictment is now clearly limited to charging such a theory of prosecution and the evidence at the second trial will comport with a quid quo pro bribery theory of honest services mail fraud. Instruction of the jury which comports with the law of honest services fraud in the First Circuit, which carefully defines official action in a manner which allows the jury to properly consider whether in connection with the BCBS and United negotiations Urciuoli intended to influence Celona's official action, and which eliminates reference to Celona's lack of "independent judgment" and "disinterested service" will address the Circuit's concerns in Urciuoli. Accordingly, Driscoll's request for preliminary instruction should be denied.

## IV. Conclusion

Based upon the foregoing, defendant Driscoll's motion *in limine* should be denied.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

**CERTIFICATION**

I hereby certify that on June 18, 2008, I electronically filed this Objection and Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.
Robert Flanders, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Richard M. Egbert, Esq.
99 Summer Street
Suite 1800
Boston, MA 02110

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

/s/ Dulce Donovan