UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' OBJECTION TO DEFENDANT DRISCOLL'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER**

Defendant Frances Driscoll has filed a Motion for Relief from Prejudicial Joinder, i.e. a motion for severance. For the reasons stated in the accompanying memorandum of law being filed simultaneously herewith, the United States objects to Driscoll's motion.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 (phone)
(401) 709-5001 (fax)
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000 (phone)
(401) 709-5001 (fax)
dulce.donovan@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CR 06-02-MML |
| | : | |
| ROBERT A. URCIUOLI and | : | |
| FRANCES P. DRISCOLL | : | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS OBJECTION TO DEFENDANT DRISCOLL'S MOTION FOR RELIEF FROM PREJUDICIAL JOINDER**

## I. Introduction

Defendant Frances Driscoll has filed a Motion for Relief from Prejudicial Joinder. Driscoll claims that her retrial should be severed from that of her codefendant, Robert Urciuoli, because she would be prejudiced in a joint trial in light of her acquittal on Count 1 of the Indictment, conspiracy to commit mail fraud. Driscoll further asserts that if she is tried together with Urciuoli, the jury will be unable to distinguish the law and evidence relative to the conspiracy count, still facing Urciuoli, from the law and evidence relative to the mail fraud count, which she faces.[1]

Driscoll's motion fails for several reasons. First, Driscoll's contention that the jury will be unable to distinguish the law and facts relevant to conspiracy versus substantive mail fraud ignores the fact that this is precisely what the jury did at her first trial. Second, the Court can adequately protect against jury confusion by instructing the jury that Driscoll is not charged with conspiracy to commit mail fraud and that the evidence at trial can only be considered by the jury in evaluating her guilt on Count 2, substantive mail fraud. Third, the fact that Driscoll is presently charged in

[1] Urciuoli also faces retrial on 35 counts of mail fraud.

only one count in the Indictment, while Urciuoli is charged in 36, does not warrant trying her separately. "Disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991). Fourth, Driscoll's request that the Court sever the trial of her case from Urciuoli's based on the possible admission of the Saylor report is premature. The admissibility of the Saylor report has yet to be decided by the Court. As a result, the potential inadmissibility of the entire report cannot serve as basis upon which to sever Driscoll's trial from Urciuoli's.[2]

## II. Factual and Procedural Background

Following a three-week trial before Judge Torres, a jury convicted Urciuoli and Driscoll, the former CEO and Senior Vice President of Roger Williams Medical Center (RWMC), for their roles in an honest-services mail fraud scheme. Urciuoli was convicted of conspiracy and 35 mail fraud counts. Driscoll was convicted of mail fraud (Count 2) but acquitted of conspiracy.

Under the scheme, defendants had RWMC make roughly $260,000 in payments to state senator John Celona in return for Celona's help in "killing" legislation that would have been detrimental to RWMC and for other official acts. The payments were disguised to make it appear that Senator Celona was receiving a weekly salary from an assisted living facility, the Village at Elmhurst, ostensibly for his efforts in promoting the facility to seniors. The case was based not

[2] Prior to the first trial Driscoll moved to sever her trial from that of her codefendants based on the possible introduction of the Saylor report at trial. The United States opposed the motion on grounds similar to those upon which it currently objects to Driscoll's motion. At trial, neither the United States nor any of the defendants sought to introduce the Saylor report, thus supporting the United States' present position that to sever Driscoll's trial from Urciuoli's is unwarranted at this stage in the case.

only on Celona's inside view of the scheme and other testimony, but on incriminating faxes and memoranda authored by Celona, Urciuoli and Driscoll.[3]

Generally, in addition to the conspiracy count remaining against Urciuoli, the Indictment charges that from August of 1997 through January 8, 2004, Urciuoli and Driscoll devised and intended to devise a scheme and artifice to defraud the citizens of the State of Rhode Island of their intangible right to the honest services of Celona, a former State Senator from North Providence. Indict. ¶ 14. The objects of the scheme were: (1) to pay money to Celona, pursuant to a consulting agreement, "so as to improperly influence and affect the official actions of Celona, specifically, to cause him to use his influence, power and authority as a State Senator to benefit the political and financial interests of RWMC and its affiliates; and (2) to deceive the State of Rhode and its citizens concerning Celona's relationship with RWMC in order for Celona to continue to promote the political interests of RWMC and its affiliates."[4]

Id. ¶¶ 97-98.

Defendants' deception included, but was not limited to, obtaining a Rhode Island Ethics Commission opinion based on false and misleading information. Id. ¶¶ 41-44. The Indictment details how defendants Urciuoli and Driscoll caused James McGuirk, RWMC's outside counsel, to send an April 6, 1998, letter to the Ethics Commission stating that Celona was employed by the

---

[3] Celona pled guilty. RWMC entered an agreement in which it admitted criminal wrongdoing by its executives, Urciuoli and Driscoll. A fourth defendant, Peter Sangermano, was acquitted.

[4] As discussed more fully in the United States' memorandum supporting its objection to Driscoll's motion for preliminary instruction, and its objection to Driscoll's motion to strike allegations from the Indictment, the United States has agreed to strike portions of the Indictment which references State law and conflict of interest.

Village to promote services provided to senior citizens.[5] Attached to the Ethics Commission letter was also a copy of the consulting agreement, which contained the same false premise and stated that Celona was being hired by the Village to "heighten awareness among seniors (the elderly) of the greater Providence community as to programs and services available" at the Village and Elmhurst Extended Care. Id. ¶¶ 24-25, 12. In the April 6, 1998, letter, Urciuoli and Driscoll failed to disclose that Celona had been performing political services for RWMC, was reporting to Driscoll, and that RWMC was funding the Village's payments to Celona. Id. ¶ 44. Thus, defendants' letter to the Ethics Commission wholly misrepresented the true identity of Celona's employer and the true nature of the work he was and would be performing. Id. ¶ 44.

For example, despite the fact that the Consulting Agreement specified that Celona was charged with increasing senior awareness as to the programs available at the Village and Elmhurst Extended Care, Urciuoli and Driscoll had already tasked Celona with influencing municipalities to increase the number of ambulance transports to the Hospital. See e.g. id. ¶¶ 35-38.[6] In addition, in or about early 1998, prior to submitting the letter to the Ethics Commission, Urciuoli and Driscoll informed Celona that they opposed Senate Bill 98-S 2796, an act which prohibited directors, trustees, or officers from serving on the board of a newly converted hospital. Id. ¶ 39.

---

[5] The evidence at the first trial showed that the idea to request an opinion from the Ethics Commission originated with McGuirk.

[6] In United States v. Urciuoli, 513 F.3d 290, (1st Cir. 2008), the Circuit concluded that Celona's ambulance run advocacy could not qualify as a deprivation of the honest services he owed the public. However, the ambulance run evidence is relevant to the fact that at the time of the April 4, 2008, Ethics Commission letter, Urciuoli and Driscoll knew that Celona was already working on issues for RWMC, not "heightening awareness" among Providence seniors concerning the services offered by the Village and Elmhurst Extended Care, thus demonstrating their deception concerning Celona's relationship to RWMC.

Subsequently, on or about March 16, 1998, Celona sent Driscoll a facsimile in which he advised that, in regard to Senate Bill 98-S 2796, he was making calls to "kill the bill" in Committee.[7] Id. ¶ 40. On or about April 23, 1998, in response to the false and fraudulent April 6, 1998, advisory opinion request, Celona received an opinion from the Ethics Commission outlining the legislative duties that he could undertake. Id.

Having deceived the Ethics Commission into endorsing a relationship between Celona and the Village that did not exist, Urciuoli throughout the next approximately six years and Driscoll, at least up until May of 2000 when she left RWMC, continued to direct Celona to use his "influence, power and authority" to take official actions which benefitted RWMC and its affiliates. Id. ¶¶ 14, 19. The Indictment details numerous official actions Celona undertook at defendants' behest, including but not limited to opposing Cancer Council legislation, Id. ¶¶ 54-60, Payment in Lieu of Taxes legislation, id. 61-64, bone marrow legislation, Id. ¶¶ 65-67, and influencing individuals and corporations doing business with RWMC in a manner intended to financially benefit RWMC,[8] Id. ¶¶ 19(d), 73-86, 87-91. Over time, defendants rewarded Celona for his

---

[7] The evidence at trial proved these allegations in the Indictment, showing that at a point in 1998 when Celona was already working to kill Alzheimer and board of directors bills and advance the rescue run issue, Urciuoli and Driscoll had McGuirk draft the submission to the Ethics Commission stating that Celona was retained by the Village to promote the Village to the elderly, attached to which was a contract based on the same false premise.

[8] In her supporting memorandum, Driscoll argues that except for one instance, all of the legislation on which Celona took official action fell within the class exception of Rhode Island General Law § 36-14-7(b). Driscoll Supp. Mem. at 7. Whether the legislation on which Celona took official action fell within the class exception is irrelevant. Nothing in Rhode Island law authorizes or protects Driscoll from participating in a scheme to pay Celona money in exchange for official actions. Urciuoli, 513 F.3d at 299. Indeed, she admits that "it is illegal to pay a legislator to influence an official decision, regardless of whether or not that decision relates to legislation falling within the class exception." Driscoll Mem. in Supp. of Mot. in Limine at 3.

efforts, increasing his original weekly salary from $700 to $1,000. Id. ¶¶ 92-94. In all, defendants paid Celona approximately $260,000.00 for his services. Id. ¶ 32.

## III. Argument

### A. Standard for Severance

Presently, defendant Driscoll does not contend that the mail fraud charge against her was initially improperly joined with that of her codefendants under Federal Rule of Criminal Procedure 8(b), nor did she so contend when she moved for severance in advance of the first trial.[9] Indeed, "[j]oint trials play a vital role in the criminal justice system . . . ." Richardson v. Marsh, 481 U.S. 200, 209 (1987). "They promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." Zafiro, 506 U.S. at 537 (internal quotations omitted). Nevertheless,

> [i]f the joinder of offenses or defendants appears in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(b). A court should grant a severance under Rule 14(b) "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. U.S., 506 U.S. 534, 539 (U.S. 1993). "Incidental spillover prejudice . . . does not suffice" to make out a

---

[9] Rule 8(b) provides:

> **Joinder of Defendants**. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

case for severance. United States v. Yefsky, 994 F.2d 885, 896 (1st Cir. 1993). A defendant must make a "strong showing of prejudice" by articulating "specific ways" in which he would be prejudiced. Id. Moreover, "[s]everance is only one remedy - and certainly the most extreme- in the federal courts' remedial arsenal." United States v. Leichter, 160 F.3d 33, 36 n.4 (1st Cir. 1998). Often, "less drastic measures, such as limiting instructions, . . . will suffice to cure any risk of prejudice." Zafiro, 506 U.S. at 539. This Court's severance rulings are reviewed for "manifest abuse of discretion," United States v. DeLeon, 187 F.3d 60, 63 (1st Cir. 1999), reversed only upon a "strong showing of evident prejudice," United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993).

### B. There Is No Risk That the Jury Will Be Unable to Distinguish Between the Law and Evidence Applicable to the Conspiracy Charge Versus the Substantive Mail Fraud Count

Driscoll maintains that severance is appropriate because if she is tried together with Urciuoli, the jury will be unable to distinguish the law and evidence on the conspiracy count, still facing defendant Urciuoli, and the mail fraud count, in which she is charged. Driscoll's argument concerning potential jury confusion is an overreaction to the procedural posture of her case. Had she never been charged with conspiracy, she and Urciuoli could still have been charged together based on their joint participation in the scheme to defraud the public of its right to the honest services of John Celona. Fed. R. Crim. P. 8(b). Her claim of potential jury confusion is belied by the fact that the jury in the first trial clearly made the distinction between the law and evidence relating to the conspiracy charge and substantive mail fraud. Any jury confusion at the upcoming trial can be cured by the Court instructing the jury concerning the law of conspiracy versus mail fraud, that Driscoll is not charged with conspiracy, and that the evidence at trial may only be

considered against her on the substantive mail fraud count. Furthermore, the United States does not oppose striking reference to Driscoll in all paragraphs of the Indictment which charge the conspiracy count. See Indict. ¶¶ 14, 17-20.

In addition, trying Driscoll and Urciuoli together will not jeopardize her right to double jeopardy. "It is clear, of course, that prosecution of a particular defendant for both conspiracy and the substantive offense does not ordinarily constitute double jeopardy." Ottomano v. United States, 468 F.2d 269, 271 (1st Cir. 1973). "Indeed, it has long been established that 'conspiracy to commit a crime is not the same offense as the substantive crime for double jeopardy purposes,' " United States v. Fornia-Castillo, 408 F.3d 52, 69 (1st Cir. 2005). (quoting United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998)). This is so because "the agreement to do the act is distinct from the [completed] act itself." Fornia-Castillo, 408 F.3d at 69 (quoting United States v. Felix, 503 U.S. 378, 390-91(1992)). Because conspiracy and the substantive crime of mail fraud are separate offenses, the jury's verdict acquitting Driscoll of conspiracy and convicting her of mail fraud are not inconsistent and her retrial on the substantive mail fraud charge is permissible. See Callanan v. United States, 364 U.S. 587, 593 (1961).

Although the First Circuit noted that Driscoll was convicted on an aiding and abetting theory, it is unclear upon what evidence the court based this conclusion. Driscoll's acquittal on the conspiracy charge does not mean that her participation in the scheme commenced after the consulting agreement was finalized and after the April 4, 2008, letter to the Ethics Commission, as she suggests. Just because the jury did not find that she conspired with Urciuoli to commit honest services mail fraud, does not mean that it concluded that she did not initially orchestrate the scheme to defraud and commit acts in furtherance of the scheme early on in Celona's relationship

with RWMC. This is precisely what the Indictment alleges. Indict. ¶¶ 23, 25. The Indictment's allegation of the same acts in support of the conspiracy count as those underlying the substantive mail fraud charge is appropriate and legally proper. See United States v. Bayer, 331 U.S. 532, 542 (1947) (stating that "the same overt acts charged in a conspiracy count may also be charged and proved as substantive offenses, for the agreement to do the act is distinct from the act itself).

**C. Driscoll's Claim of Prejudice Based on the Number of Charges Against her and the Quantity of Evidence, Does Not Warrant Severance**

Driscoll also contends that severance is appropriate because of the disparity in the number of counts in which she is charged compared with Urciuoli. The fact that Driscoll is charged in only one count in the Indictment, while Urciuoli is charged in thirty-six, does not warrant trying her separately. "Disparity in the quantity of evidence and of proof of culpability are inevitable in any multidefendant trial, and by themselves do not warrant a severance." United States v. Cardascia, 951 F.2d 474, 482 (2d Cir. 1991). In addition, incidental spillover prejudice attendant in any joint trial, does not warrant the extreme relief Driscoll seeks. Yefsky, 994 F.2d at 896. Accordingly, Urciuoli and Driscoll should be tried together.

**D. Driscoll's Claims That She Will Be Prejudiced Due to the Inadmissibility of the Saylor Report is Speculative and Her Motion is Premature[10]**

Driscoll claims that introduction of the entire report completed by District Court Judge Dennis Saylor is "critical" to her defense against the charges in the Indictment. Driscoll Supp. Mem. at 18. She maintains, however, that the entire report would be inadmissible against

[10] Driscoll also suggests that her trial with Urciuoli presents potential issues concerning the admissibility of coconspirator hearsay statements. The Court can adequately instruct the jury that statements Urciuoli made to his coconspirators may only be considered against him, not Driscoll.

her codefendant, Urciuoli. Thus, Driscoll argues, if she and Urciuoli are tried together, Driscoll will be unable to receive a fair trial because she will be deprived of evidence which is essential to the jury's assessment of her state of mind.

The admissibility of the Saylor report, either in whole, or in part, has yet to be determined by the Court. Until that time as the Court rules on its admissibility, Driscoll's motion to sever based on this issue is premature. See United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995) (speculation about what evidence will be presented at trial does not suffice to overcome the "intentionally high" "hurdle" of demonstrating that severance is appropriate).

That said, it is unlikely that the Saylor report, or any portion of it, is admissible. First, the section of the report dealing with John Celona is not exculpatory of Driscoll. At the time that the Saylor report was authored, July 2, 1998, Driscoll and Urciuoli had already devised and were executing the scheme to defraud.[11] See Indictment ¶¶ 22, 23 25. Celona started working for RWMC in February of 1998, and immediately thereafter Driscoll began using his services on behalf of RWMC to "kill" legislation. Indict. ¶ 40. In addition, in March and April of 1998,

---

[11] Driscoll's discussion of the Saylor report's relevance to her defense is another point in her memorandum in which she urges the notion that her acquittal on conspiracy highlights the fact that she had nothing to do with the scheme at the outset. As discussed above, Driscoll's attempt to push the date of her first acts in furtherance of the scheme past the initial few months of the scheme is unavailing. First, the Indictment alleges that Driscoll and Urciuoli devised and intended to devise scheme to defraud from in or about August 1997. Indict. ¶ 96. The Indictment further alleges that Driscoll committed acts in furtherance and the execution of the scheme from October 1997, to on or about May 2000. Indict. ¶¶ 23, 25, 103, 104. These alleged acts include Driscoll drafting a job description for Celona on or about October 15, 2007, and thereafter causing the consulting agreement to be drafted and redrafted in a manner which falsely described the nature of Celona's duties and to whom he was to report. Id. ¶¶ 23, 25. The testimony at the first trial supported Driscoll's commission of acts in furtherance of the scheme early on. Thus, Driscoll's claim that she had "nothing" to do with the outset of the scheme is contradicted by the allegations remaining against her and the evidence.

Driscoll and her codefendants submitted the false and fraudulent letter to the Ethics Commission in order to deceive the public about Celona's relationship with RWMC and permit him to continue to work on RWMC's behalf. Id. ¶¶ 41-44. The Saylor report notes that it relied upon the Ethics Opinion decision in its review. Hence, because the Ethics Opinion was obtained fraudulently, any conclusion that was based upon review of the Ethics Commission decision could not exculpate Driscoll of her criminal intent. The possibility that Driscoll read something in July which stated that Celona's contract was neither "illegal or unethical" does not exculpate her of her participation in a scheme which continued through May of 2000, when she left RWMC.

Additionally, the admissibility of the Celona section of the Saylor report is highly questionable because it speaks to the ultimate questions before the jury. Saylor's conclusion concerning the Celona contract was that "[u]nder the circumstances, we find no basis for concluding that the contract was illegal or unethical." The jury in this case will be faced with determining whether the Village's hiring of Celona was merely a ruse designed to hide the nature of the work Celona was performing, the fact that he was working for RWMC, and that RWMC was paying his salary. Saylor's pronouncement regarding the legality of Celona's consulting agreement removes this issue from the jury's hands.

Moreover, the admissibility of the one portion of the Saylor report which Driscoll represents she read depends upon Driscoll taking the stand in her own defense and stating that she read the report and relied on its contents. At present, Driscoll's representation that she read and relied upon the report is unsupported by the record. Notably, in her motion for severance filed in advance of the first trial, Driscoll claimed that "[t]he introduction of the entire [Saylor] report is essential to the Jury's assessment" of her state of mind which she "must have the ability to utilize

to its fullest for her to receive fair trial." Driscoll May 23, 2006, Supp. Mem. at 7, 9-10. Driscoll did not seek introduction of the Saylor report at the first trial, thus demonstrating that her current request for severance based on her need to rely on the report is, at best, speculative.

## IV. Conclusion

Based upon the foregoing, the United States respectfully requests that the Court deny Defendant Driscoll's Motion for Relief from Prejudicial Joinder.

Respectfully submitted,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Luis M. Matos
LUIS M. MATOS
First Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
luis.matos@usdoj.gov

/s/ Dulce Donovan
DULCE DONOVAN
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza
Providence, RI 02903
(401)709-5000 - phone
(401)709-5001 - fax
dulce.donovan@usdoj.gov

Dated: June 18, 2008

**CERTIFICATION**

I hereby certify that on June 18, 2008, I electronically filed this Objection and Memorandum with the Clerk of the US District Court for the District of Rhode Island using the CM/ECF System. The following participants have received notice electronically:

Kristie M. Passalacqua, Esq.
Michael Connolly, Esq.

Richard M. Egbert, Esq.
99 Summer Street

Robert Flanders, Esq.
Joseph Whelan, Esq.
Hinckley, Allen & Snyder
1500 Fleet Center
Providence, RI 02903

Suite 1800
Boston, MA 02110

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903

Kevin Bristow, Esq.
76 Westminster Street
Providence, RI 02903

/s/ Dulce Donovan